Sheila **MARQUEZ,** on Behalf of Jose E. **INFANTE,** Plaintiff,

v.

Donna **SHALALA,** Secretary of Health and Human Services, Defendant.

No. 94 Civ. 2603 (DC).

United States District Court,
S.D. New York.

Sept. 28, 1995.

---

Sheila Marquez on Behalf of Jose E. Infante, Tampa, Florida, pro se.

Mary Jo White, United States Attorney for Southern District of New York by Sapna V. Raj, Assistant United States Attorney, New York City, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

Plaintiff Jose E. Infante, by his mother Sheila Marquez, brings this action under Sections 1383(c)(3) and 205(g) of the Social Security Act (the "Act"), 42 U.S.C. §§ 1383(c)(3) and 405(g) (1988), challenging a final determination of the Secretary of Health and Human Services (the "Secretary") that Infante is not entitled to Supplemental Security Income ("SSI"). The Secretary moves for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted and the Secretary's determination is affirmed.

## I. BACKGROUND

### A. Procedural History

On August 11, 1992, Marquez filed an application on behalf of Infante for SSI benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–1383 (1988). (Tr. 39–42).[1] The initial application and a request for reconsideration were denied. (Tr. 46–53). Marquez later requested and received a hearing before Administrative Law Judge Thomas P. Dorsey (the "ALJ"), who conducted a hearing on July 12, 1993 to decide, *de novo*, whether Jose Infante was eligible for SSI benefits.[2] The ALJ determined on October 4, 1993 that Jose was not entitled to SSI benefits, and four days later, Marquez filed a request for review of the ALJ's decision. Upon the denial of her request, the ALJ's findings and determination became the final decision of

---

1. "Tr." refers to the transcript filed by the Secretary as part of her answer.

2. The Social Security Administration advised Ms. Marquez of her right to representation, yet she appeared *pro se* at all of the proceedings. During a pre-hearing conference on June 3, 1993 and again at the June 12, 1993 ALJ hearing, Marquez was advised of her right to counsel. (Tr. 20–21, 100, 101).

the Secretary. Marquez appeals to this Court from that final decision.

## B. *Facts*

Jose Infante is an eleven year old boy who has suffered from chronic asthma since the age of two months. (Tr. 64). Medical evidence documents a history of asthma, though the condition does not restrict his daily activities. (Tr. 48). The plaintiff currently takes several different medications that relieve his sporadic breathing difficulties. (Tr. 61, 91, 94, 99). He was twice admitted to the hospital, once in 1991 and again in 1993. (Tr. 113).

Jose, a bilingual student, testified at the administrative hearing that he played baseball in the schoolyard[3] and watched children's television programs at home. (Tr. 25, 27). Although he did not play with children in his apartment building, he did play with his younger brother. (Tr. 26). Indeed, Jose also played with other children in his class, and got along well with his teachers. (Tr. 25).

Jose testified at the hearing that he had recently suffered an asthma attack. (Tr. 27). His last visit to the hospital had been in May 1993 (*id.*), when the hospital admitted him because he was feeling "bad" and having trouble breathing. (Tr. 32). Doctors at the hospital determined that Jose did not require admission into the intensive care unit, and instead administered Prednisone, Proventil and nebulizer therapy, three medications used to relieve his condition. (Tr. 113). The hospital released Jose after three days. (*Id.*).

Marquez, Jose's mother, also testified regarding Jose's asthmatic condition. At one time, Marquez rushed Jose to the hospital after playing with his brother. (Tr. 36). Marquez also stated that Jose tired easily and often, especially when playing and while climbing four flights up to their apartment. (Tr. 36, 76). Consequently, his school placed him in a first floor classroom. (Tr. 32). In particular, Jose complained of breathing difficulties and pains near his heart (Tr. 74), and Marquez explained that the plaintiff's condition is exacerbated because his medications make him hyperactive. (*Id.*). Marquez further testified that the boy suffers from convulsions (*id.*), mood swings and substantial weight gain. (Tr. 36–37).

Dr. Thanjan, Jose's pediatrician from 1986 to 1993, enumerated the different medical conditions encountered by Jose, including episodes of asthma, allergic edema, and rhinitis. (Tr. 93–94). The doctor's report did not indicate that the asthma had any effect on the child's activities. (Tr. 94). Importantly, the doctor noted that the child's behavior and functions were age appropriate. (*Id.*).

In 1993, Marquez changed doctors and Dr. Faye Kokotos became Jose's principal provider of routine pediatric health care. (Tr. 111). She indicated that Jose experienced coughs and shortness of breath when exercising. (*Id.*). Jose's symptoms worsened in cold weather. (*Id.*). Dr. Kokotos placed Jose on nebulizer therapy and prescribed Prednisone. (Tr. 112). Like Dr. Thanjan, Dr. Kokotos determined that the asthma condition did not affect Jose's daily activities and that his function and behavior were age-appropriate. (*Id.*).

Jose's teacher, Mrs. N. Pallens, similarly reported no behavioral or functional problems with Jose. In her responses to a questionnaire submitted to the ALJ, she stated that the plaintiff "performs well in class and participates often in answering questions." (Tr. 70–71). Mrs. Pallens did not notice any difficulty moving or walking, nor did she report any attendance problems due to illness. (Tr. 72–73).

## II. *DISCUSSION*

### A. *Determining Disability for Children*

■ A child under the age of 18 is eligible for disability benefits if the child "suffers from any medically determinable physical or mental impairment of comparable severity," *i.e.*, comparable to what would be considered to be a disability for an adult. 42 U.S.C. § 1382c(a)(3)(A) (1988). The Social Security Administration defines "comparable severity" to "mean that [the child's] physical or mental

---

**3.** Jose's mother questioned whether the child actually played baseball.

impairment(s) so limits [his or her] ability to function independently, appropriately, and effectively in an age-appropriate manner that [the child's] impairment(s) and the limitations resulting from it are comparable to those which would disable an adult." 20 C.F.R. § 416.924(a) (1994). To determine comparable severity, the Secretary must evaluate the child using a four-step procedure. 20 C.F.R. § 416.924(b) (1994); *see Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 259 (2d Cir.1988).

First, the ALJ determines whether the child is involved in "substantial gainful activity." 20 C.F.R. § 416.924(b) (1994). If so, the child is not disabled. 20 C.F.R. § 416.924(c) (1994). "Substantial gainful activity is *work activity* that is both substantial and gainful." 20 C.F.R. § 416.972 (1994) (emphasis supplied). If the child is not involved in substantial gainful activity, the next inquiry is whether the impairment is so severe that it causes "more than [a] minimal limitation in [the child's] ability to function independently, appropriately, and effectively in an age-appropriate manner." 20 C.F.R. § 416.972(d) (1994). If so, the ALJ will then ascertain whether the impairment meets or equals an impairment listed in appendix 1 to Subpart P of part 404 in 20 C.F.R. Finally, if the child does not suffer from a listed impairment, the ALJ will apply an "individualized functional assessment to decide whether [the child has] an impairment(s) that would prevent an adult from engaging in substantial gainful activity." 20 C.F.R. § 416.924(f) (1994). If the child meets either the third or final step for a period of twelve months, the Secretary will find the child eligible for SSI.

### B. *Scope of Judicial Review*

■ This Court must give the Secretary's final decision great deference, "even if [the Court] might justifiably have reached a different result upon a *de novo* review." *Valente v. Secretary of Health & Human Serv.,* 733 F.2d 1037, 1041 (2d Cir.1984). Specifically, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (1988). Substantial evidence, however, is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citations omitted). This Court's review thus centers on whether the "Secretary's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Cruz v. Sullivan,* 912 F.2d 8, 11 (2d Cir.1990).

■ Because Jose is *pro se,* this Court is under a duty to make a " 'searching investigation' of the record" to ensure that all of his rights were adequately protected. *Cruz,* 912 F.2d at 11. The ALJ, at the hearing, was similarly under a heightened duty to develop and consider all relevant facts. *Id.* The ALJ, therefore, had an "affirmative obligation to assist [Jose] in developing [his] case." *See Cruz,* 912 F.2d at 12 (quoting *Eiden v. Secretary of Health, Educ. & Welfare,* 616 F.2d 63, 65 (2d Cir.1980)).

### C. *The ALJ's Decision*

■ The ALJ acknowledged Jose's asthmatic condition, holding that Jose's impairments were "severe" because they "impose[d] more than a minimal or slight limitation on [his] ability to function in an age-appropriate manner." (Tr. 13). Although medical records indicated prescription of Proventil, Cromolyn and Prednisone for asthma attacks, the ALJ found no evidence of breathing difficulties between attacks. Moreover, the ALJ found no evidence of recurrent attacks, and concluded that, despite a noticeable limitation in Jose's ability to function in an age-appropriate manner, the condition did not meet or equal a limitation listed by the Administration. (*Id.*).

The ALJ next considered whether the limitations were of "comparable severity." Pursuant to 20 C.F.R. § 416.924(a) (1994), the ALJ weighed Jose's ability to function in an age-appropriate manner. The ALJ found that Jose had no cognitive, communicative, motor, social and personal/behavioral limitations, and was physically active and able to play with toys. The transcript of the hearing, moreover, shows that the ALJ extensively questioned Jose about his schooling and

242

play habits. The ALJ also examined Marquez at length about Jose's medical and asthmatic history, including medications and hospital visits and admissions. Despite recognizing a history of asthma, the ALJ ultimately determined that Jose was able to function in an age-appropriate manner, and concluded that Jose did not possess a disability of comparable severity that would disable an adult.

#### D. *Review of the ALJ's Decision*

I find that the Secretary's determination is supported by substantial evidence. The record supports the ALJ's finding that Jose functioned in an age-appropriate manner. For example, the evidence showed that Jose got along with children and teachers at school, played baseball in the schoolyard, and played with his brother at home. Likewise, reports of two treating pediatricians supported the ALJ's conclusion that Jose's impairment was not so severe as to cause more than a minimal limitation in Jose's ability to function independently and appropriately.

I find further that the ALJ met his "affirmative obligation" to assist Jose. The ALJ spent a great deal of time at the hearing trying to elicit testimony from both Jose or Marquez regarding Jose's medical condition, and play and school habits. The transcript of the hearing shows that the ALJ made an adequate attempt to develop Jose's case, consider relevant facts, and protect his rights.

Finally, I find that the ALJ correctly applied the four-part test under 20 C.F.R. § 416.924. First, the ALJ correctly found that the plaintiff was not involved in substantial gainful activity. Second, the ALJ found that Jose suffered from bronchial asthma, which constitutes a severe impairment. Third, the ALJ found that the impairment did not meet or equal a listed impairment under appendix 1 to Subpart P of Part 404 in 20 C.F.R. Finally, the ALJ concluded that Jose did not suffer from impairments of "comparable severity" that would render an adult disabled. Again, this conclusion was supported by both treating doctors, who verified that Jose had no restrictions on motor functioning. Indeed, the child's primary doctor, Dr. Kokotos, further stated that she noticed no limitations in communicative, cog-

nitive or social functioning. Accordingly, the ALJ's decision was not based on an application of an erroneous legal standard.

### III. *CONCLUSION*

The Secretary's motion for judgment on the pleadings is granted, and the decision of the Secretary is affirmed. The Clerk of the Court is directed to enter judgment accordingly.

SO ORDERED.